# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 CR 444 - 1 | **DATE** | 10/15/2002 |
| **CASE TITLE** | USA vs. DEJUAN THORNTON | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
 ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Government's motions in limine (1) to admit officers' testimony regarding reason they responded to apartment #403; (2) to admit evidence inextricably linked to the charged offenses or, alternatively, pursuant to Rule 404(b); and (3) to admit evidence testimony regarding statements to 911 operator and operator's records are denied without prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | OCT 31 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 02 CR 444 |
| Plaintiff, ) | |
| ) | Honorable John W. Darrah |
| v. ) | |
| ) | |
| DEJUAN THORNTON, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on the Government's motions *in limine* (1) to Admit Officers' Testimony Regarding Reason They Responded to Apartment #403; (2) to Admit Evidence Inextricably Linked to the Charged Offenses or, Alternatively, Pursuant to Rule 404(b); and (3) to Admit Evidence Testimony Regarding Statements to 911 Operator and Operator's Records. For the reasons that follow, the Governments' motions *in limine* are denied without prejudice.

Defendant, DeJuan Thornton ("Defendant"), is charged in a three-count indictment with being a felon in possession of a firearm (Count One), possessing with intent to distribute heroin in a public housing project (Count Two), and using and carrying a firearm in furtherance of his possession with intent to distribute heroin (Count Three).

The Government seeks to present the following evidence at trial. On February 24, 2002, Russell Sims and Alanda Cosby entered the lobby of 2450 West Monroe in the Rockwell Gardens housing project in Chicago, Illinois. Defendant approached them and said, "This is a stickup, give me your money," or words to that effect, and pulled a black and silver automatic pistol from his waistband and pointed it at Sims. Sims refused to give up his money, whereupon, Defendant shot Sims in the left leg.



The next day, February 25, 2002, Alanda Cosby saw Defendant in the building at 2450 West Monroe going into Apartment 403. She then called 911 and reported this. This call was memorialized as follows.

> OPERATOR: Chicago Emergency [Unintelligible].
> CALLER: Yes[,] hi, my name is uh Alanda[;] and I'm calling for a report that I had put out on, what was it[,] the 24th, on the 24th[,] when my boy in my hood had got shot up.
> OPERATOR: What's the problem now?
> CALLER: They said when I see the man that I could call 911[,] and they'll come and get him 'cause they're concerned.
> OPERATOR: What's your name?
> CALLER: My name is Alanda.
> OPERATOR: What's your last name?
> CALLER: Cosby, c-o-s-b-y.
> OPERATOR: And where are you calling from?
> CALLER: I'm calling . . . I want it to stay private.
> OPERATOR: You want it to stay private?
> CALLER: Yeah.
> OPERATOR: Where is he at now?
> CALLER: In apartment 4, 4, 403[;] he is in apartment 403. He's the tallest guy up in the house.
> OPERATOR: Wait a minute, wait a minute, where are you at? Where is he at? Give me an address.
> CALLER: He at uh, he at huh, the man at 2450 West Monroe.
> OPERATOR: What's the report number?
> CALLER: I don't ha . . . I don't have the report number. 'Cause they just talked to my boyfriend[;] they didn't give him no paper. 'Cause he was in bad shape[;] he was in surgery like.
> OPERATOR: So what is this guy wanted for? Shooting a person?
> CALLER: Yeah, for shooting uh-huh. Attempt murder.
> OPERATOR: What's his name?
> CALLER: His name is Pablo.
> OPERATOR: No, the guy that got shot up.
> CALLER: Uh, his name is Russell Sims.
> OPERATOR: Russell Sims?
> CALLER: Uh-huh.
> OPERATOR: S-i-double m-s?
> CALLER: S-i-m-s.
> OPERATOR: And Russell, r-u-s-s-e-l
> CALLER: Uh-huh, r-u-s-s-e-l-l, that what you said?
> OPERATOR: R-u-s-s-e-l?
> CALLER: And another L.

OPERATOR: Do you know his date of birth?
CALLER: Uh-huh.
OPERATOR: What is it?
CALLER: 7-14-81.
OPERATOR: Alright, OK, and he is in apartment 403.
CALLER: Yeah, the man, Pa, his name, Pa, his name Pablo[;] he real tall.
OPERATOR: Pablo what?
CALLER: He is real tall and [unintelligible].
OPERATOR: What's his last name, do you know?
CALLER: I don't know his last name.
OPERATOR: Is he black, Hispanic[;] what is he?
CALLER: He's black[,] and he's really tall.
OPERATOR: About how tall?
CALLER: He's about um, I'd say like Michael Jordan.
OPERATOR: I have no idea how tall that is.
CALLER: Umm . . . .
OPERATOR: Do you have any idea? Very tall, that's all you can tell me?
CALLER: [Unintelligible]
OPERATOR: How old is this guy, Pablo?
CALLER: He's about like around in his thirties something.
OPERATOR: What's he wearing?
CALLER: Um, I don't know what he's wearing[;] I know he's real, I just seent [sic] him, and he hurried up and rushed into apartment.
OPERATOR: You don't remember what he was wearing[,] though?
CALLER: No, he's real tall.
OPERATOR: OK, and does he have a shaved head or anything like that? Or is he . . . .
CALLER: He's got a car[;] he's got a station wagon. It's like, I'm trying to see, what's his car look like? It's like blue[;] it's like bluish-gray, like a navy blue, like wood, and a brown stripe on the side of it, with like um, it is like um.
OPERATOR: Wood panel.
CALLER: Right, yeah, around the sides of it.
OPERATOR: OK, and about how much does this guy weigh, you have any idea?
CALLER: No, 'cause he is like real skinny[;] I don't know what he weigh.
OPERATOR: Thin build?
CALLER: Huh?
OPERATOR: Thin build? He's thin?
CALLER: Yeah, he's [,] he's real thin. His name is Pablo, like he's like a chief in the building, like old, like he chief like the renegade.
OPERATOR: Alright, we'll go ahead and send them to 2450 West Monroe wanted for shooting Russell Sims. Um, apartment 403.
CALLER: Right, that's what apartment he's in.
OPERATOR: OK, is this building open down on the bottom where they can get in?
CALLER: Yeah, you can just walk right in the building [;] but he um, he um [- -] they ain't going to open the door.

OPERATOR: They're going to have to if the police are there.
CALLER: Alright, they'll probably try to hide.
OPERATOR: Well, that's all they can do is go in there and look for him then, OK?
CALLER: Alright.
OPERATOR: OK, apartment 403, thank you.
CALLER: Um, all they got to do is not say his name just walk in 'cause he is the tallest guy.
OPERATOR: OK, ma'am, they know all this, OK?
CALLER: Alright.
OPERATOR: Thank you.
CALLER: Alright.

Police were dispatched to 2450 West Monroe, Apartment 403 in response to the call to the Chicago Police 911 Center. Six officers responded to the dispatch, approached Apartment 403 and knocked on the door. Defendant opened the door and had a firearm in his waistband. Defendant then ran through the apartment, pursued by the police. After a brief chase through the apartment, Defendant was apprehended; and a firearm, a chrome .380 caliber semiautomatic pistol, was recovered.

The Government seeks to admit the evidence of Defendant's alleged actions the night before his arrest, arguing that it is "intricately related" to the acts charged in the indictment and, therefore, admissible. *See United States v. Gibson*, 170 F.3d 673, 680 (7th Cir. 1999). The "intricately related" doctrine admits uncharged acts if their absence would create a "'chronological or conceptual void' in the story of the crime" or if the uncharged acts are "'so blended or connected' that [they] incidentally involve[], explain[] the circumstances surrounding, or tend[] to prove any element of the charged crime." *Gibson*, 170 F.3d at 681. Uncharged acts that are "intricately related" to the charged crime are admissible unless the probative value is substantially outweighed by the danger of unfair prejudice from its admission. *United States v. Hargrove*, 929 F.2d 316, 320 (7th Cir. 1991).

The Government argues that the evidence of Defendant's alleged act on February 24, 2002 is crucial to an understanding of the events related to Defendant's arrest and the recovery of the

firearm. Without the "whole story", the Government argues, the jury will not understand why police officers went to Defendant's apartment, why so many officers responded to the call, why the officers were cautious in approaching the apartment and why they acted as they did. The number of officers called to the apartment and their caution while there is not at issue and is not probative of the offenses charged. Even if the existence of these facts were of consequence to the determination of this case, admission of this evidence is substantially outweighed by the danger of unfair prejudice to Defendant. The proffered evidence of an armed robbery and attempted murder, or at least attempted aggravated battery, allegedly committed by Defendant the day before the offenses charged in this case would be highly prejudicial to Defendant if presented to this jury.

The Government also argues that this evidence is also admissible under Rule 404(b) to show motive, opportunity, and knowledge to possess the firearm. However, this argument is predicated upon a theory that the Government anticipates Defendant may advance at trial, such as that the gun found in Apartment 403 does not belong to him. However, there is no indication at this time that the Defendant will contest the anticipated testimony of the police that the gun was seen in the Defendant's waistband or that it was there without his knowledge. The prudent course is to wait until Defendant raises these issues before considering this theory presented by the Government regarding admission of this evidence. The Court can then consider this issue in light of all the relevant evidence then before the jury and consider not only the Government's assertion that the evidence is admissible pursuant to Rule 404(b) but also consider its relevancy pursuant to Rule 403. Therefore, the Government's Motion to Admit Evidence is denied without prejudice.

The Government has also filed a motion to admit into evidence Cosby's statements to the 911 operator and the operator's records. The Government asserts the operator's records are admissible as an exception to the rule against hearsay specifically as business records pursuant to

Federal Rule of Evidence 803(6). The Government does not address the issue of the whether of admission of the records may be considered under the public records exception of Federal Rule of Evidence 803(8).

The Government also argues that the included hearsay declarations of Alanda Cosby are admissible as an excited utterance pursuant to Federal Rule of Evidence 803(2) or a present sense impression pursuant to Federal Rule of Evidence 803(1). Because the Court has denied admission of this material at this time on relevancy grounds, it is not necessary to address the merits of the Government's motion to admit this material as exceptions to the hearsay rule.

Therefore, this motion is denied without prejudice.

Dated: October 15, 2002

JOHN W. DARRAH
United States District Judge